**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|   |   |   |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DACCO Transmission Parts (NY), Inc., *et al*., | : | Case No. 16-13245 (MKV) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

# SCHEDULE OF ASSETS AND LIABILITIES FOR
# DACCO TRANSMISSION PARTS (NY), INC.
# (CASE NO. 16-13245 (MKV))

---

[1]     The Debtors in these chapter 11 cases include, among others, Transtar Holding Company. A full list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule I to the Declaration of Joseph Santangelo in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 3] and at http://cases.primeclerk.com/transtar. The Debtors' executive headquarters are located at 7350 Young Drive, Walton Hills, OH 44146.

## GLOBAL NOTES REGARDING DEBTORS' SCHEDULES OF
## ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

*These notes (the "Global Notes") regarding the Debtors' Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs," and together with the Schedules, the "Bankruptcy Schedules") comprise an integral part of the Bankruptcy Schedules and should be referred to and considered in connection with any review of them.*

DACCO Transmission Parts, (NY) Inc. and its affiliated debtors and debtors in possession (each, a "**Debtor**," and collectively, the "**Debtors**")[1] have prepared unaudited Bankruptcy Schedules with the assistance of the Debtors' advisors pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

The Debtors have made reasonable efforts to ensure that the Bankruptcy Schedules are accurate and complete, based upon information that was available to them at the time of preparation.  However, inadvertent errors or omissions may exist and the subsequent receipt of information and/or further review and analysis of the Debtors' books and records may result in changes to financial data and other information contained in the Bankruptcy Schedules.  Moreover, because the Bankruptcy Schedules contain unaudited information that is subject to further review and potential adjustment, there can be no assurance that these Bankruptcy Schedules are complete or accurate.  Accordingly, the Debtors reserve their right to amend and/or supplement their Bankruptcy Schedules in all respects from time to time as may be necessary or appropriate, and they may do so as information comes available.  Notwithstanding the foregoing, the Debtors shall not be required to update the Bankruptcy Schedules for any reason.  The Bankruptcy Schedules and these Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.

These Global Notes are incorporated by reference in, and comprise an integral part of, the Bankruptcy Schedules, and should be referred to and reviewed in connection with any review of the Bankruptcy Schedules.  In the event that the Bankruptcy Schedules differ from the Global Notes, the Global Notes shall control.

---

[1] The Debtors in these chapter 11 cases include, among others, Transtar Holding Company.  A full list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule I to the Declaration of Joseph Santangelo in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 3] (the "First Day Declaration") and at http://cases.primeclerk.com/transtar.  The Debtors' executive headquarters are located at 7350 Young Drive, Walton Hills, OH 44146.

i

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

<u>**GENERAL NOTES**</u>

**Description of the Cases**.  On November 20, 2016 (the "<u>**Petition Date**</u>"),[2] the Debtors each commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The chapter 11 cases of the Debtors are being jointly administered for procedural purposes only pursuant to an order of the United States Bankruptcy Court for the Southern District of New York (the "<u>**Bankruptcy Court**</u>"), dated November 22, 2016 [Docket No. 27].  Notwithstanding the joint administration of the Debtors' chapter 11 cases, each of the Debtors has filed its own Bankruptcy Schedules.

**Reservation of Rights**.  The Debtors reserve the right to amend the Bankruptcy Schedules in all respects as may be necessary or appropriate, including, but not limited to, the right to assert offsets or defenses to, or to dispute, any claim reflected on the Bankruptcy Schedules as to amount, liability, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."  Furthermore, nothing contained in the Bankruptcy Schedules or these Global Notes shall constitute a waiver of the Debtors' rights with respect to these chapter 11 cases and specifically with respect to any issues involving the total amount of any party's secured claim, substantive consolidation, equitable subordination, and/or causes of action, including causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.

**Basis of Presentation**.  Given the differences between the information requested in the Bankruptcy Schedules and the financial information utilized under generally accepted accounting principles in the United States of America ("<u>**GAAP**</u>"), the aggregate asset values and claim amounts set forth in the Bankruptcy Schedules do not necessarily reflect the amounts that would be set forth in a balance sheet prepared in accordance with GAAP.  The Bankruptcy Schedules are a reflection of the assets and liabilities as recorded in the Debtors' books and records and, therefore, may not be an accurate reflection of all of the Debtors' potential liabilities.

Some of the Debtors' scheduled assets and liabilities are unliquidated or of unknown value at this time.  Accordingly, the Bankruptcy Schedules may not accurately reflect the aggregate amount of the Debtors' current assets and liabilities.

The preparation of the Bankruptcy Schedules required the Debtors to make estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities and the reported amounts of expenses during the reporting period.  Actual results could differ from those estimates.  Without prior notice, the Debtors may amend their Bankruptcy Schedules as they deem necessary and appropriate to reflect material changes, if any, that arise during the pendency of their chapter 11 cases.

The Bankruptcy Schedules reflect the separate assets and liabilities of each individual Debtor.  However, due to the consolidated nature of the Debtors' business operations, many contractual rights and obligations are shared by more than one Debtor.  As a result, the Debtors and their

---

[2] Unless otherwise indicated, all figures in the Bankruptcy Schedules are reported as of the Petition Date.

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

advisors were required to make certain assumptions about the ownership of assets and responsibility for liabilities of certain Debtors.

**Date of Valuations**.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, book values as of the Petition Date are reflected on the Bankruptcy Schedules.  For this reason, amounts ultimately realized may vary from book value, and such variance may be material.  Except as otherwise noted, each asset and liability of each Debtor is shown on the basis of historical cost of the asset or liability in accordance with such Debtor's books and records as of the Petition Date.  Where necessary, the Debtors have indicated that the value of certain assets is "unknown" or "undetermined."

**Causes of Action and Litigation**.  The Debtors have made their best efforts to set forth known causes of action against third parties as assets in their Bankruptcy Schedules.  The Debtors reserve all of their rights with respect to all causes of action they may have, whether disclosed or not disclosed, and neither these Global Notes nor the Bankruptcy Schedules shall be deemed a waiver of any such cause of action.

The inclusion of any litigation action in the Bankruptcy Schedules does not constitute an admission by the Debtors of (i) liability, (ii) the validity of any such litigation action, or (iii) the amount and treatment of any potential claim resulting from any litigation action currently pending or that may arise in the future.

**Payment of Prepetition Claims Pursuant to Court Orders**.  On November 23, 2016, the Bankruptcy Court entered orders (collectively with any subsequent final orders authorizing such payments, the "**First Day Orders**") authorizing, but not directing, the Debtors to pay prepetition obligations to employees, taxing and regulatory authorities, and critical vendors (among others).  Amounts scheduled herein for these claims reflect balances owed as of the Petition Date and do not reflect any payments made pursuant to the First Day Orders.  The Debtors reserve all rights to update the Bankruptcy Schedules to reflect further payments made pursuant to the First Day Orders.

**Classification as Insider, Officer and/or Director**.  In the circumstances where the Bankruptcy Schedules require information regarding insiders and/or officers and directors, included herein are each Debtor's (a) directors and (b) employees that are, or were during the relevant period, officers (or persons otherwise in control of the Debtor).  Certain employees who may be considered "insiders" under the Bankruptcy Code may not be listed in the Bankruptcy Schedules in instances where such employees are not insiders of the particular Debtor for which the disclosure is required.  The listing of a party as an insider on the Bankruptcy Schedules is not intended to be nor should it be construed as a legal characterization of such party as an insider and does not act as an admission of any fact, claim, right or defense.  All such rights, claims and defenses are hereby expressly reserved.  Further, certain employees have been included in this disclosure for informational purposes only and should not be deemed to be "insiders" in terms of control of any of the Debtors, management responsibilities or functions, decision-making or corporate authority and/or as otherwise defined by applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

**Confidential Information with Respect to Employees**.  In an effort to protect their employees' privacy, the Debtors have included only business addresses of current employees on the Bankruptcy Schedules.  Additionally, in certain instances, employees have been referred to by their Employee ID numbers (rather than their respective names or other personally identifiable information).  Upon request, the Debtors will provide employee names and personal addresses to parties in interest who have a reasonable basis for review (as determined by the Debtors in their sole discretion, or otherwise ordered by the Bankruptcy Court).

**Specific Notes**.  These Global Notes are in addition to the specific notes set forth below (the "**Specific Notes**") and notes set forth within the Bankruptcy Schedules.

<u>SPECIFIC NOTES REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES</u>

For the avoidance of doubt, these Specific Notes should be read in conjunction with the Global Notes.  Nothing contained in the Specific Notes should be construed as an admission.

1.  **Schedule A/B**

    a.  **Part 1**.  The Debtors use an integrated cash management system to streamline the collection, transfer, and disbursement of funds generated by the Debtors' business operations.  As part of the Debtors' cash management system, funds in certain banks accounts are "swept" on a daily basis into a central collection account.  As a result of such "sweeps," certain of the Debtors' bank accounts may reflect a balance of $0.  Unless otherwise noted, the Bankruptcy Schedules reflect closing account balances as of the Petition Date.

    b.  **Part 2.**  In February 2014, certain of the Debtors acquired ETX, Inc. and its subsidiaries (together, "**ETX**").  In connection with that acquisition, certain Debtors placed approximately $3 million into an escrow account that the seller of ETX may draw upon if certain conditions exist.  The approximate balance in the escrow account is currently $1.1 million.  The Debtors retain an ownership interest in a portion of the balance because certain amounts in the account may revert to the Debtors upon the occurrence of certain conditions.

    c.  **Part 3**.  The value of accounts receivable, security deposits, inventory and other personal property is reported as of the Petition Date.

        The Debtors record the value of their accounts receivable net of reserves held for doubtful or uncollectible accounts.  The Debtors do not differentiate between accounts that are (i) 90 days old or less and (ii) greater than 90 days old for the purposes of maintaining sufficient reserves.  As a result, the actual value of each Debtor's accounts receivable may vary from the value listed.

        A limited number of Debtors have not listed the value of their accounts receivable greater than 90 days old because the manner in which the Debtors account for "parts credits" results in these accounts receivable having a negative value in the aggregate.  Under the Debtors' automobile parts credit program, a customer who purchases an automobile part also gives the Debtors a parts credit at the time of

iv

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

purchase.  If the customer makes another purchase in the future, they may return their part in exchange for the parts credit, which entitles them to a discount on that purchase.  Although parts credits are never settled in cash, the Debtors record each as a negative account receivable until the corresponding customer returns the part.  For more information on the Debtors' automobile parts credit program, see the *Debtors' Motion for Interim and Final Orders Authorizing Debtors to Honor Certain Prepetition Obligations to Customers and to Continue Customer Programs* [Docket No. 7].

Accounts receivable are presented in gross amounts, but without consideration for open or terminated contract liabilities, liquidated damages, setoff rights, or collateral held by the Debtors, unless otherwise stated.  Likewise, accounts payable are shown net of owed automobile part credits amounts without consideration for open or terminated contracts, liquidated damages, setoff rights, prepaid amounts, deposits, or collateral that has been posted on behalf of the counterparty.

d. **Part 4**.  Each Debtor's Schedule A/B includes its ownership interest in direct subsidiaries (if any).  Each Debtor's indirect subsidiaries may be viewed on the organizational structure chart attached as <u>Schedule II</u> to the *Declaration of Joseph Santangelo in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 3].  The value of each subsidiary's stock is listed as "unknown" because the Debtors (a) report their value on a consolidated basis and (b) did not undertake a historical analysis to assign values to each subsidiary's stock and believe it would be an inefficient use of estate assets to do so.

e. **Part 5**.  The Debtors have listed categories of inventory on Schedule A/B: Part 5, Inventory.  The schedules of certain Debtors include a negative value under the description "Other Inventory/Reserve."  The inclusion of this value is a standard accounting technique that is used to represent the Debtors' reserve for inventory spoilage, theft, and other causes of obsolescence.

Although the Debtors have made reasonable efforts to ensure that their list of fixed assets is accurate and complete based upon the information available to them, certain assets may be described in less detail than others.  The Debtors believe that it would be unduly burdensome and cost prohibitive to provide additional descriptions with respect to these assets.

f. **Parts 7 and 8**.  Debtors that own fixed assets have provided an attachment that includes a description of each asset and its location.  The Debtors' reporting system uses numerical codes to represent locations.  In some instances, that number appears on the schedules because the reporting system could not automatically convert the number into corresponding location.  The Debtors determined that manually reconciling each reported number with the actual location of the corresponding asset would be an inefficient use of estate resources.  The Debtors are able to provide additional detail upon the reasonable request of an interested party.

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

      g.  **Part 9**.  In addition to the real property owned by the Debtors, the Debtors also lease a number of properties.  The Debtors have not included these leases on Schedule A/B because they do not ascribe a book value to them.  Rather, each lease is listed on Schedule G.

      h.  **Part 11**.  Debtor Transtar Autobody Technologies, Inc. purchases equipment that is later sold to customers as part of a package of goods.  The Debtor retains no ownership interest in such equipment after it is sold.  For accounting purposes, however, the Debtor amortizes the value of its initial equipment purchases over a twelve-month period.  This value is reflected in Part 11, Question 77.

2.  **Schedule D**.  The claims listed on Schedule D arose or were incurred on various dates.  A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, not all such dates are included for each claim. To the best of the Debtors' knowledge, all claims listed on Schedule D were incurred before the Petition Date.

Except as otherwise agreed pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court, the Debtors reserve the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim.  In certain instances, a Debtor may be a co-obligor or guarantor with respect to scheduled claims of other Debtors.  No claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The descriptions provided in Schedule D are intended only to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Nothing in the Global Notes or the Bankruptcy Schedules shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.  Certain of the Debtors' agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financing agreements.  No attempt has been made to identify such agreements for purposes of Schedule D.  Moreover, Schedule D does not reflect claims that may constitute secured claims on account of setoff rights.

With respect to Schedule D, each of the Debtors listed herein is either a borrower or guarantor under that certain First Lien Credit Facility (the "**FLCF**"), dated as of October 9, 2012 and that certain Second Lien Term Loan Facility (the "**SLTLF**"), dated as of October 9, 2012.

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

The Debtors have listed the SLTLF on Schedule D because such facility is secured by liens on substantially all of the Debtors' assets.  However, the Debtors estimate that the claims under the SLTLF are entirely unsecured due to the value of the Debtors' assets and the subordination of such facility's liens to the liens securing the FLCF.

3.  **Schedule E/F.**

The claims listed on Schedule E/F arose or were incurred on various dates.  A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim.  To the best of the Debtors' knowledge, all claims listed on Schedule E/F were incurred before the Petition Date.

Certain claims listed in certain Debtors' Schedule E/F have an associated negative value. These claims are held by suppliers who owe the Debtors a greater amount under the Debtors' automobile parts credit system than the Debtors owe such supplier for trade purchases.

a.  **Unsecured Priority Claims.**  The Debtors reserve all rights and defenses regarding whether a claim listed on Part 1 of Schedule E/F is not entitled to priority treatment under 11 U.S.C. § 507.

Certain claims listed on Part 1 of Schedule E/F are claims owing to various taxing authorities to which the Debtors may potentially be liable. These claims may be the subject of ongoing audits and the Debtors may be unable to determine with certainty the amount of many, if not all, of the claims listed on Part 1 of Schedule E/F. Therefore, the Debtors listed all such claim amounts as "Unknown" in amount, pending final resolution of ongoing audits or other outstanding issues.

b.  **General Unsecured Claims**.  The Debtors have used reasonable efforts to report all general unsecured claims against the Debtors listed on Part 2 of Schedule E/F based upon the Debtors' existing books and records as of the Petition Date. The claims listed on Part 2 of Schedule E/F arose or were incurred on various dates.

Part 2 of Schedule E/F does not include certain deferred charges, deferred liabilities, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Petition Date.  The Debtors have made reasonable efforts to include as contingent, unliquidated and/or disputed the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has accrual or receipt not invoiced.

Part 2 of Schedule E/F contains claims related to potential, pending, and closed litigation involving the Debtors.  To the extent litigation involving a particular Debtor has been identified, such information is contained in the Schedule for that Debtor.  The Debtors expressly incorporate by reference into Part 2 of Schedule E/F all parties to pending and potential litigation listed in the Debtors' SOFAs as

contingent, unliquidated and disputed claims, to the extent not already listed on
Schedule E/F.

In certain instances, a Debtor may be a co-obligor or guarantor with respect to
scheduled claims of other Debtors, and no claim set forth on Part 2 of Schedule
E/F of any Debtor is intended to acknowledge claims of creditors that are
otherwise satisfied or discharged by other entities.  Nothing in the Global Notes or
the Bankruptcy Schedules is intended as a modification or interpretation of the
terms of such agreements.  The claims of individual creditors for, among other
things, goods, services, or taxes are listed at the amounts reflected in the Debtors'
books and records and may not reflect credits or allowances due from such
creditor.  The Debtors reserve all of their rights respecting such credits or
allowances.

Counterparties to the Debtors' executory contracts may be holders of contingent
and unliquidated claims arising from (a) obligations under those executory
contracts, and/or (b) rejection damages in the event those executory contracts are
rejected.  Such claims may not be reflected on Part 2 of Schedule E/F.

The amount of each unsecured nonpriority claim listed in Part 2 of Schedule E/F
is as of the Petition Date and does not reflect accruals with respect to the amount
of such claims.

For purposes of the Schedules, the Debtors have only scheduled claims and
executory contracts for which the Debtors may be contractually and/or directly
liable.  No claims have been scheduled for a Debtor that may have benefited
directly or indirectly from a contractual relationship to which the Debtor was not
a named party.  No claims or executory contracts have been scheduled where
payments to third parties were made on a Debtor's behalf for administrative
convenience or as a result of the Debtors' cash management system.

4. **Schedule G**.  Listing a contract or agreement on Schedule G does not constitute an admission
that such contract or agreement is an executory contract or unexpired lease.  The Debtors
reserve all rights to challenge whether any of the listed contracts, leases, agreements or other
documents constitute an executory contract or unexpired lease, including if any are unexpired
non-residential real property leases.  Any and all of the Debtors' rights, claims and causes of
action with respect to the contracts and agreements listed on Schedule G are expressly
preserved.

While every reasonable effort has been made to ensure the accuracy of Schedule G regarding
executory contracts and unexpired leases, inadvertent errors, omissions or over-inclusions
may have occurred.  The Debtors hereby reserve all of their rights to dispute the validity,
status or enforceability of any contract, agreement, or lease set forth on Schedule G that may
have expired or may have been modified, amended, and supplemented from time to time by
various amendments, restatements, waivers, estoppel certificates, letters and other
documents, instruments, and agreements which may not be listed on Schedule G.

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on Schedule G. Certain of the executory agreements may not have been memorialized in writing and could be subject to dispute. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, including supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such documents may also not be set forth on Schedule G.

The Debtors reserve all of their rights to dispute or challenge the characterization of the structure of any transaction, or any document or instrument (including without limitation, any intercompany agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. In the ordinary course of business, the Debtors may have entered into agreements, written or oral, for the provision of certain services on a month-to-month, annual or at-will basis. Such contracts may not be included on Schedule G. However, each Debtor reserves the right to assert that such agreements constitute executory contracts.

5. **Schedule H.** The Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are listed elsewhere in the Bankruptcy Schedules, they have not been set forth individually on Schedule H.

The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Thus, the Debtors reserve their right to amend the Schedules to the extent additional guarantees are identified.

Each of the Debtors is either a borrower or guarantor under the FLCF, dated as of October 9, 2012 and that Second Lien Term Loan Facility the SLTLF, dated as of October 9, 2012.

<u>**SPECIFIC NOTES REGARDING THE DEBTORS' STATEMENTS OF FINANCIAL AFFAIRS**</u>

1. **SOFA 1.** The revenue amounts shown in response to this question reflect net revenues as reported on the Debtors' books and records. Because the Debtors prepare consolidated financial statements, when the Debtors have contractual rights that are shared among Debtors, revenues are typically recorded at one debtor entity and allocated among applicable Debtors as an intercompany adjustment when necessary for external tax or statutory reporting purposes. For the purposes of the Bankruptcy Schedules, the Debtors have attributed the Debtors' consolidated revenue to the subsidiary to which such revenue was attributed in the Debtors' financial records.

Beginning with the Debtors' 2015 audit, the Debtors' auditors, PriceWaterhouseCoopers ("**PwC**"), included freight costs that the Debtors billed to customers in their gross revenue figures. PwC determined that such additional revenue was not material enough to require an

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

amended audit for 2014.  Therefore, the 2014 gross revenue reported for each Debtor does not reflect these amounts.

After 2014, the Debtors stopped recording revenue at DACCO, Incorporated ("**DACCO**") due to a change in their accounting systems that resulted in the termination of sales by this Debtor (with the exception of sales to other Debtors and their subsidiaries).  As a result, DACCO does not have recorded revenue for the years 2015 and 2016.  All sales formerly performed by DACCO are now conducted through Transtar Industries, Inc. and recorded as revenue at this entity.

In February 2014, certain of the Debtors acquired ETX, Inc. and its subsidiaries.  As a result, the 2014 gross revenue figure reported by ETX, Inc. and its subsidiaries only accounts for revenue earned in the months following the acquisition.

2.  **SOFA 3**.  Certain payroll related payments made to the Debtors' payroll provider, Automatic Data Processing, Inc. ("**ADP**"), have been listed in the aggregate.  In addition, to the extent the Debtors withhold amounts from their employees on account of benefit contributions and remit such funds to third parties, such transactions have not been listed in response to SOFA 3.

Further, in response to SOFA 3, the Debtors have not included bank fees, wire fees and other miscellaneous charges that are deducted in the ordinary course of business by the Debtors' banks.  Transfers of funds made between bank accounts of the same Debtor have also not been included in response to SOFA 3.

3.  **SOFA 4**.  With respect to SOFA 4, the listing of any person or entity is not intended to be nor shall it be construed as a legal characterization of such party as an "insider" as defined in section 101(31) of the Bankruptcy Code, and does not act as an admission of any fact, claim, right or defense, and all such rights, claims and defenses are hereby reserved.  For more information regarding each Debtor's officers and directors, see SOFA 28 and SOFA 29.  The payroll-related amounts shown in response to this question for any salary, bonus or additional compensation, and/or severance payments constitute gross amounts and do not include certain reductions, including employee tax or benefit withholdings.  Amounts shown in response to this question for any travel and business-related expense reimbursements include expenses reimbursed directly to the applicable insider.

4.  **SOFA 6**.  The operating Debtors engage in certain customer programs, including a warranty program and automobile parts credit program, pursuant to which customers may receive discounts on purchases by returning previously purchased parts.  The Debtors may also receive discounts from suppliers and other vendors by similarly returning parts they have purchased from such entities.  These transactions were not considered setoffs for the purpose of responding to SOFA 6, Question 13 because they are not settled against any accounts.  The Debtors reserve all rights with respect thereto and make no admission of waiver thereby.

5.  **SOFA 7**.  With respect to SOFA 7, the Debtors have made reasonable efforts to accurately record all lawsuits and administrative proceedings to which a Debtor is or was party to within the one (1) year immediately preceding the Petition Date.  Certain litigation against a

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

particular Debtor may relate to other Debtors.  The actions described in SOFA 7 are the responsive proceedings or pending proceedings of which the Debtors are actually aware.

6.  **SOFA 10**.  The Debtors have made reasonable efforts to accurately record the value of (i) property lost and (ii) payments received by the Debtors on account of such lost property, in each case, within one year prior to the Petition Date.  To the extent the Debtors have not been able to locate and verify such payments made to the Debtors on account of such lost property, SOFA 5, Question 10 lists the corresponding value as "unknown."  To the extent the value of such loss has not been estimated, or the Debtors have not yet received payments for such loss, SOFA 5, Question 10 lists the amounts as "pending."

7.  **SOFA 11.**  Although the services of any entities who provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date were provided for the benefit of and on behalf of all the Debtors, all of the payments for such services were made by Transtar Industries, Inc. and are listed only on that Debtor's response to SOFA 11.

8.  **SOFA 16**.  Certain Debtor entities collect customer information, including credit card numbers and customer names, that may constitute "personally identifiable information" within the meaning of 11 U.S.C. § 101(41A).  The Debtors adhere to the Payment Card Industry Data Security Standard, an industry standard for the protection of consumer information, with respect to their customer information.  The Debtors' affirmative response to SOFA 16 does not constitute an admission by the Debtors that the information collected is "personally identifiable information" within the meaning of 11 U.S.C. § 101(41A).

9.  **SOFA 20**.  In response to this question, the Debtors have included inventory which is held by third parties on consignment in the ordinary course of business.

10.  **SOFA 25**.  With respect to SOFA 25, each Debtor has identified all businesses in which it has a direct ownership interest in more than 5% of the voting or equity securities.  Indirect ownership interests, if any, are not listed.

11.  **SOFA 30**.  Certain payroll-related payments made to "insiders" (as defined in section 101(31) of the Bankruptcy Code) have been omitted from SOFA 30 and can be found in SOFA 4.

12.  **SOFA 31**.  With respect to SOFA 31, the Debtors have provided the name and federal taxpayer-identification number of the parent corporation of the consolidated group for tax purposes.

The Debtors, their management, agents, officers, directors, employees, representatives, attorneys and financial advisors do not guarantee or warrant as to the accuracy and/or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained herein.  While every effort has been made to provide accurate and complete information herein, inadvertent errors or omissions may exist.  The Debtors, their management,

*These Global Notes regarding the Debtors' Bankruptcy Schedules comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

officers, directors, employees, agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised or re-categorized.  In no event shall the Debtors, officers, directors, employees, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused, even if the Debtors, officers, directors, employees, agents, attorneys and financial advisors are advised of the possibility of such damages.

***END OF GLOBAL NOTES***

***BANKRUPTCY SCHEDULES BEGIN ON THE FOLLOWING PAGE***

**Fill in this information to identify the case:**

Debtor name    **DACCO Transmission Parts (NY), Inc.**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **16-13245**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                    12/15

---

| Part 1: | Summary of Assets |
|---|---|

1.    ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

    1a. **Real property:**
    Copy line 88 from *Schedule A/B*.................................................................................................    $ _____ **0.00**

    1b. **Total personal property:**
    Copy line 91A from *Schedule A/B*..............................................................................................    $ _____ **0.00**

    1c. **Total of all property:**
    Copy line 92 from *Schedule A/B*................................................................................................    $ _____ **0.00**

---

| Part 2: | Summary of Liabilities |
|---|---|

2.    ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................    $ **611,700,000.00**

3.    ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*..............................................    $ _____ **0.00**

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................    +$ _____ **0.00**

4.    **Total liabilities** ............................................................................................
    Lines 2 + 3a + 3b    $ **611,700,000.00**

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **DACCO Transmission Parts (NY), Inc.** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known) | **16-13245** |

☐ Check if this is an amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

■ No. Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No. Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.

Debtor    **DACCO Transmission Parts (NY), Inc.**                     Case number *(If known)* **16-13245**
          Name

☐ Yes Fill in the information below.

---

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.
☐ Yes Fill in the information below.

---

| Part 8: | Machinery, equipment, and vehicles |

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No. Go to Part 9.
☐ Yes Fill in the information below.

---

| Part 9: | Real property |

**54. Does the debtor own or lease any real property?**

■ No. Go to Part 10.
☐ Yes Fill in the information below.

---

| Part 10: | Intangibles and intellectual property |

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No. Go to Part 11.
☐ Yes Fill in the information below.

---

| Part 11: | All other assets |

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No. Go to Part 12.
☐ Yes Fill in the information below.

---

Debtor    **DACCO Transmission Parts (NY), Inc.**                              Case number *(If known)* **16-13245**
          <sub>Name</sub>

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.....................................................>* | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 + 91b. | $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $0.00 |

**Fill in this information to identify the case:**

Debtor name    **DACCO Transmission Parts (NY), Inc.**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **16-13245**

☐ Check if this is an
amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

| | | Column A | Column B |
|---|---|---|---|
| 2. **List in alphabetical order all creditors** who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. | | **Amount of claim**<br><br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** |

| 2.1 | **See Attached Schedule D: Part 1**<br>Creditor's Name | Describe debtor's property that is subject to a lien | | |
|---|---|---|---|---|

Creditor's mailing address

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Date debt was incurred**

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    **$611,700,000.00**

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

**If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.**

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|

Schedule D:  Part 1 - Creditors Who Have Claims Secured by Property

| Creditor Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country | Insider or Related Party? | Codebtor | If Multiple Creditors Have an Interest in the Same Property, Specify Each Creditor and Its Relative Priority | Date Debt was Incurred, Description of Debtor's Property Subject to the Lien and the Nature of Lien | Contingent | Unliquidated | Disputed | Amount of Claim (Do not deduct the value of the collateral) | Value of Collateral that Supports this Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cortland Capital Markets, as Administrative Agent | Cortland Capital Market Services LLC | Attn: Chris Capezuti | 225 West Washington Street, 21st Floor | | Chicago | IL | 60606 | | | X | Substantially all of the Debtors' assets:  Royal Bank of Canada as first priority; Cortland Capital Markets as second priority | Guarantor under the Second Lien Term Loan Facility pursuant to the Amended and Restated Second Lien Agreement dated as of October 9, 2012, secured by a second priority position in substantially all of the Debtors' assets | X | | | $183,200,000.00 | Undetermined |
| Royal Bank of Canada, as Administrative Agent | Royal Bank of Canada - RBC Agency Services Group | Attn: Rodica Dutka | 20 King Street West | 4th Floor, South Tower | Toronto | ON | M5H 1C4 | Canada | | X | Substantially all of the Debtors' assets:  Royal Bank of Canada as first priority; Cortland Capital Markets as second priority | Guarantor under the Revolving Facility pursuant to the Amended and Restated First Lien Credit Agreement dated as of October 9, 2012, secured by a first priority position in substantially all of the Debtors' assets | X | | | $51,900,000.00 | Undetermined |
| Royal Bank of Canada, as Administrative Agent | Royal Bank of Canada - RBC Agency Services Group | Attn: Rodica Dutka | 20 King Street West | 4th Floor, South Tower | Toronto | ON | M5H 1C4 | Canada | | X | Substantially all of the Debtors' assets:  Royal Bank of Canada as first priority; Cortland Capital Markets as second priority | Guarantor under the First Lien Term Loan Facility pursuant to the Amended and Restated First Lien Credit Agreement Dated as of October 9, 2012, secured by a first priority position in substantially all of the Debtors' assets | X | | | $376,600,000.00 | Undetermined |
| | | | | | | | | | | | | | | | TOTAL: | $611,700,000.00 | Undetermined |

**Fill in this information to identify the case:**

Debtor name  **DACCO Transmission Parts (NY), Inc.**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK

Case number (if known)  **16-13245**

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                       12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**   **List All Creditors with PRIORITY Unsecured Claims**

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ■ No. Go to Part 2.

   ☐ Yes. Go to line 2.

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
   out and attach the Additional Page of Part 2.

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|
| | | ☐ Contingent |
| | | ☐ Unliquidated |
| | **Date or dates debt was incurred** ____ | ☐ Disputed |
| | **Last 4 digits of account number** ____ | **Basis for the claim:** _____ |
| | | Is the claim subject to offset? ☐ No ☐ Yes |

**Part 3:**   **List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies,
   assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

**Part 4:**   **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | 0.00 |
| **5b. Total claims from Part 2** | 5b. + | $ | 0.00 |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. | $ | 0.00 |

**Fill in this information to identify the case:**

Debtor name **DACCO Transmission Parts (NY), Inc.**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known) **16-13245**

☐ Check if this is an
   amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**

☐ ■ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.

☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*    *Property*
(Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.2   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.3   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.4   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **DACCO Transmission Parts (NY), Inc.** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known) | **16-13245** |

☐ Check if this is an
   amended filing

## Official Form 206H
## Schedule H: Your Codebtors                                                12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the
Additional Page to this page.

#### 1. Do you have any codebtors?

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

#### 2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of
creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule
on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **See Attached Schedule H** | | | ☐ D _____ <br> ☐ E/F _____ <br> ☐ G _____ |

In re DACCO Transmission Parts (NY), Inc.
Case No. 16-13245
Schedule H:  Codebtors

| Name of Codebtor | Name of Creditor | Description of Claim | Applicable Schedules (D, E/F, G) |
|---|---|---|---|
| All other Debtor entities[1] | Cortland Capital Markets, as Administrative Agent | Second Lien Term Loan Facility pursuant to the Amended and Restated Second Lien Agreement dated as of October 9, 2012 | Schedule D, Part 1 |
| All other Debtor entities | Royal Bank of Canada, as Administrative Agent | Revolving Facility pursuant to the Amended and Restated First Lien Credit Agreement Dated as of October 9, 2012 | Schedule D, Part 1 |
| All other Debtor entities | Royal Bank of Canada, as Administrative Agent | First Lien Credit Facility pursuant to the Amended and Restated First Lien Credit Agreement Dated as of October 9, 2012 | Schedule D, Part 1 |
| | | | |
| [1] The mailing address for all debtor entities is 7350 Young Drive, Walton Hills, OH 44146 | | | |

**Fill in this information to identify the case:**

Debtor name    **DACCO Transmission Parts (NY), Inc.**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **16-13245**

☐ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December 22, 2016**          *X* **/s/ Joseph Santangelo**
                                              Signature of individual signing on behalf of debtor

                                              **Joseph Santangelo**
                                              Printed name

                                              **Authorized Signatory**
                                              Position or relationship to debtor

Official Form 202                    **Declaration Under Penalty of Perjury for Non-Individual Debtors**